## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF PENNSYLVANIA

SUSAN TRAURIG, *on behalf of herself and all others similarly situated*,

Plaintiff,

vs.

RICE ENERGY INC., DANIEL J. RICE III, DANIEL J. RICE IV, TOBY Z. RICE, JAMES W. CHRISTMAS, ROBERT F. VAGT, JOHN F. MCCARTNEY, and KATHRYN J. JACKSON,

Defendants.

Civil Case No.:

**CLASS ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

**CLASS ACTION COMPLAINT FOR VIOLATION OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff Susan Traurig ("Plaintiff"), on behalf of herself and the proposed class defined herein, brings this class action suit for violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934. In support of this Class Action Complaint, Plaintiff, by her attorneys, alleges upon information and belief, except for her own acts, which are alleged on knowledge, as follows:

### NATURE OF THE ACTION

1.      Plaintiff brings this action on behalf of herself and the public stockholders of Rice Energy, Inc., ("Rice" or the "Company") against the Company and Rice's Board of Directors (collectively, the "Board" or the "Individual Defendants," as further defined below) for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and Rule 14a-9 promulgated thereunder ("Rule 14a-9").

2.      On June 19, 2017, EQT Corporation ("EQT") and the Company announced that

they had entered into an Agreement and Plan of Merger ("Merger Agreement") pursuant to which Eagle Merger Sub I, Inc., an indirect, wholly owned subsidiary of EQT, will merge with and into Rice, with Rice surviving as a wholly owned subsidiary of EQT in an all-stock transaction (the "Proposed Transaction"). Pursuant to the terms of the Merger Agreement, each share of Rice common stock will be exchanged for 0.37 shares of EQT common stock and (ii) $5.30 in cash, representing an implied value of $27.04 per share and $6.7 billion in the aggregate (the "Merger Consideration"). Accordingly, upon consummation of the transaction, existing EQT shareholders will hold approximately 65% of the outstanding common stock of EQT and former Rice stockholders will hold approximately 35% of the outstanding common stock of EQT.

3.      On July 27, 2017, defendants issued materially incomplete and misleading disclosures in the Form S-4 Registration Statement (the "Registration Statement") filed with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction. The Registration Statement is deficient and misleading in that it fails to provide adequate disclosures of all material information related to the Proposed Transaction.

4.      Accordingly, Plaintiff alleges herein that Defendants have violated Sections 14(a) and 20(a) of the Exchange Act in connection with the filing of the Registration Statement. Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331, pursuant to 15 U.S.C. § 78aa (federal question jurisdiction), as Plaintiff alleges violations of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

6.      The Court has personal jurisdiction over each of the Defendants because each either

2

is a corporation that is incorporated under the laws of, conducts business in and maintains operations in this District or is an individual who either is present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because: (a) one or more of the Defendants either resides in or maintains executive offices here; (b) a substantial portion of the transactions and wrongs complained of herein occurred here; and (c) Defendants have received substantial compensation and other transfers of money here by doing business here and engaging in activities having an effect here.

## PARTIES

8.      Plaintiff is, and has been at all relevant times, the owner of shares of Rice common stock.

9.      Defendant Daniel J. Rice, III ("Rice III") has served as a member of Rice's board of directors since October 2013 and currently serves as a member of the health, safety, and environmental committee.

10.      Defendant Daniel J. Rice, IV ("Rice IV") has served as Rice's Chief Executive Officer and a member of the Company's board of directors since October 2013. Additionally Rice IV currently serves as a member of the health, safety and environmental committee.

11.      Defendant Toby Z. Rice ("Toby Rice") has served as Rice's President and Chief Operating Officer, and as a member of the Company's board of directors, since October 2013. Additionally, Toby Rice currently serves as a member of the health, safety and environmental committee.

12.      Defendant James W. Christmas ("Christmas") has served as a member of Rice's

board of directors since January 2014 and currently serves as chairman of the audit committee and a member of the compensation committee.

13.     Defendant Robert F. Vagt ("Vagt") has served as the chairman of Rice's board of directors since January 2014 and currently serves as chairman of the compensation committee and a member of the audit committee.

14.     Defendant John McCartney ("McCartney") has served as a member of the Company's board of directors since March 2015 and currently serves as a member of the audit and nominating and governance committees.

15.     Defendant Kathryn J. Jackson ("Jackson") joined Rice's board of directors on April 4, 2017.

16.     Defendants Rice IV, Rice III, Toby Rice, McCartney, Jackson, Vagt, and Christmas are collectively referred to herein as the "Board" or the "Individual Defendants."

17.     Defendant Rice is an independent natural gas and oil company focused on the acquisition, exploration and development of natural gas, oil and NGL properties in the Appalachian Basin. The Company is a Delaware corporation and maintains its principal offices at 2200 Rice Drive, Canonsburg, PA 15317. Rice's common stock is traded on the New York Stock Exchange under the symbol "RICE."

18.     The Individual Defendants and Rice are referred to collectively herein as "Defendants."

**OTHER RELEVANT ENTITIES**

19.     EQT conducts its business through three business segments: EQT Production, EQT Gathering and EQT Transmission. EQT Production is the largest natural gas producer in the Appalachian Basin, based on average daily sales volumes. EQT Gathering and EQT Transmission

provide gathering, transmission and storage services for EQT's produced gas, as well as for independent third parties across the Appalachian Basin, through EQT's ownership and control of EQT Midstream Partners, LP ("EQM") (NYSE: EQM), a publicly traded limited partnership formed by EQT to own, operate, acquire and develop midstream assets in the Appalachian Basin.

20.    Merger Sub is an indirect, wholly owned subsidiary of EQT and was formed solely for the purpose of carrying out the merger.

## CLASS ACTION ALLEGATIONS

21.    Plaintiff brings this action individually and as a class action on behalf of all holders of Rice stock who are being, and will be, harmed by Defendants' actions described herein (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to, controlled by, or affiliated with, any Defendant, including the immediate family members of the Individual Defendant.

22.    This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23.

23.    The Class is so numerous that joinder of all members is impracticable. According to the S-4 filed with the SEC on July 27, 2017, as of July 24, 2017, there were approximately 213,395,392 shares of Rice common stock outstanding. These shares are held by thousands of beneficial holders who are geographically dispersed across the country.

24.    There are questions of law and fact which are common to the Class and which predominate over questions affecting any individual Class member. The common questions include, inter alia, the following:

> (a)    Whether defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

(b)    Whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

(c)    Whether Plaintiff and the other members of the Class would suffer irreparable harm were the Proposed Transaction consummated.

25.    Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class.

26.    Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class.

27.    The prosecution of separate actions by individual members of the Class creates a risk of inconsistent or varying adjudications with respect to individual members of the Class, which could establish incompatible standards of conduct for Defendants.

28.    Plaintiff anticipates that there will be no difficulty in the management of this litigation. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

29.    Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class a whole.

30.    Accordingly, Plaintiff seeks injunctive and other equitable relief on behalf of herself and the Class to prevent the irreparable injury that the Company's stockholders will continue to suffer absent judicial intervention.

## FACTUAL BACKGROUND

**Company Background**

31.     Rice Energy, an independent natural gas and oil company focused on the acquisition, exploration and development of natural gas, oil, and NGL properties in the Appalachian Basin, operates in three business segments. The Exploration and Production segment is engaged in the acquisition, exploration and development of natural gas, oil and NGLs. The Rice Midstream Holdings segment is engaged in the gathering and compression of natural gas production in Belmont and Monroe Counties, Ohio. The Rice Midstream Partners segment is engaged in the gathering and compression of natural gas production in Washington and Greene Counties, Pennsylvania, and in the provision of water services to support the well completion services of Rice and third parties in Washington and Greene Counties, Pennsylvania and in Belmont County, Ohio.

**The Sale Process**

32.     The Proposed Transaction is the result of a two-year long courtship between two of the top natural gas producers in the Marcellus and Utica Shale area.

33.     In July of 2015, after representatives of EQT had reached out to Rice to discuss the potential benefits of a strategic business combination, Rice IV, Chief Executive Officer of Rice, and Vagt, the Chairman of the Rice's board, along with other members of the Rice's management team met with David L. Porges ("Porges"), the Chairman and then-Chief Executive Officer of EQT and certain other members of the EQT management team, to discuss general industry matters. Although the parties discussed the potential benefits of a strategic business combination between Rice and EQT, the matter was not pursued further by either party at that time.

34.     Discussions between the two companies resumed a year later when Rice IV met

with Porges concerning a strategic business combination. Shortly thereafter, on May 19, 2016, Rice entered into a confidentiality agreement with EQT, and Rice and EQT proceeded to engage in reciprocal due diligence. As this process was underway, members of Rice management contacted Barclays Capital Inc., ("Barclays") and Vinson & Elkins, LLP ("Vinson & Elkins") to assist Rice in considering the potential combinations with EQT, a second publicly traded independent exploration and production company that had previously expressed an interest in a potential strategic transaction ("Company A"), and other alternative counterparties.

35.    Throughout the month of June, the Company, and its representatives, held discussions with Company A and EQT. Additionally, representatives of Barclays contacted four other potential publicly traded exploration and production counterparties to gauge their interest in a business combination with Rice. Two of the potential counterparties declined the opportunity and a third requested more time while it completed its own portfolio assessment but ultimately never reengaged. The fourth ("Company C") indicated to Barclays that it was interested in considering the opportunity.

36.    On June 23, 2016, Rice entered into a confidentiality agreement with Company A and thereafter engaged in reciprocal due diligence with Company A.

37.    On June 28, 2016, Rice entered into a confidentiality agreement with Company C and thereafter engaged in reciprocal due diligence with Company C.

38.    On July 5, 2016, EQT submitted an indication of interest to acquire Rice in an all-stock business combination transaction at an exchange ratio of 0.33 of a share of EQT common stock for each share of Rice common stock, representing an 18% premium to Rice's stock price the month of July. Over the next several days, Rice and EQT proceeded to negotiate the terms of a potential deal and, on July 12, 2017, the Rice board authorized management to make a

counterproposal to EQT of an exchange ratio of 0.37 of a share of EQT common stock for each share of Rice common stock, which represented a premium of approximately 26% of Rice's stock price.

39.     On July 15, 2016, Company A delivered to Rice a written indication of interest proposing an all-stock transaction at a 10% to 15% premium to Rice's stock price.

40.     Throughout July 2016, and August 2016, Rice continued to negotiate with Company A and EQT, until changes in the trading price of Rice's stock prompted the company to put a hold on all negotiations.  Accordingly, in light of the trading prices of Rice's stock relative to EQT's stock (which eliminated the implied premium in EQT's prior proposal) and Company A's stock (which resulted in Rice being the larger company), discussions between Rice, EQT, and Company A ceased in late August 2016.

41.     Discussions between Rice and EQT resumed the following spring, and on May 8, 2017, EQT delivered a letter containing non-binding indication of interest to the Rice board, indicating a willingness to acquire Rice in an all-stock transaction at a fixed exchange ratio of 0.43 of a share of EQT common stock for each share of Rice common stock.

42.     This indication of interest was reviewed by Rice's Board during a May 21, 2017 board meeting, and resulted in the Board authorizing management to make a counterproposal to EQT for a business combination in which Rice stockholders would receive the equivalent of between 0.51 and 0.52 of a share of EQT common stock for each share of Rice common stock.

43.     Over the next several days, the parties proceeded to negotiate regarding the consideration, until ultimately, each agreed to take a proposal to their respective boards for a combination in which Rice stockholders would receive 0.37 of a share of EQT common stock and $5.30 in cash for each share of Rice common stock ratio. On May 26, 2017, Rice's board

authorized management to accept the exchange ratio of 0.37 of a share of EQT common stock and $5.30 in cash for each share of Rice common stock, subject to negotiation of a definitive merger agreement and completion of due diligence.

44.     On June 2, 2017, Vagt met James E. Rohr, lead independent director of the EQT board, for lunch to discuss the transaction generally and, in particular, the number and identity of Rice board members that would be appointed to the combined company board.

45.     On June 15, 2017, following several days of back-and-forth negotiations between the two parties and their respective representatives, the parties reached a tentative agreement regarding several outstanding issues relating to the merger including, among other things, proposed compromises related to (i) equity awards for Rice employees who would not continue with EQT, (ii) a retention program that would allow Rice to provide 12 months of severance and 12 months of health insurance to its employees who remained with Rice through closing, (iii) the Rice board's ability to terminate the merger agreement for a superior proposal but requiring the same termination fees for both parties, (iv) each party's interim operating covenants, (v) post-closing compensation and benefits matters for employees continuing with EQT, (vi) a three-year non-competition obligation of members of the Rice family and Robert Wingo, but conceding that other executives would be subject only to the non-competition obligations in their respective employment agreements, and (vii) board composition of the combined company, which would include two existing Rice board members (one of whom would be Rice IV).

46.     Following this understanding, representatives from management of Rice and EGT, counsel for both companies, and representatives of the parties' respective financial advisors continued to work on outstanding diligence items and finalizing the terms of the agreement.

47.     On June 17 and 18, 2017, the companies and their representatives finalized the

outstanding terms of the merger agreement and ancillary agreements. On June 18, 2017, Rice's board of directors met to vote on the proposed transaction. At this meeting, representatives of Barclays delivered to Rice's board Barclay's opinion that the consideration to be paid in the merger was fair, from a financial point of view. Following further discussions relating to EQT, the Board unanimously determined that it was advisable and fair to, and in the best interests of the Company and the Company's stockholders for the Company to enter into the merger agreement, and the approved the merger agreement and declared it advisable. The following day, the parties issued a joint press release announcing the merger.

**The Proposed Transaction**

48.     In a joint press release dated June 19, 2017, Rice and EQT announced that they had entered into the Merger Agreement pursuant to which EQT will acquire all of the outstanding shares of Rice common stock for total consideration of approximately $6.7 billion.

49.     The press release states in pertinent part:

PITTSBURGH — (June 19, 2017) — EQT Corporation (NYSE: EQT) and Rice Energy Inc. (NYSE: RICE) announce that they have entered into a definitive merger agreement under which EQT will acquire all of the outstanding shares of Rice common stock for total consideration of approximately $6.7 billion – consisting of 0.37 shares of EQT common stock and $5.30 in cash per share of Rice common stock. EQT will also assume or refinance approximately $1.5 billion of net debt and preferred equity. The transaction is expected to close in the fourth quarter of 2017, subject to customary closing conditions.

"This transaction brings together two of the top Marcellus and Utica producers to form a natural gas operating position that will be unmatched in the industry. Rice has built an outstanding company with an acreage footprint that is largely contiguous to our existing acreage, which will provide substantial synergies and make this transaction significantly accretive in the first year, said Steve Schlotterbeck, EQT's president and chief executive officer.

"Since the beginning of 2016, we have added more than 485,000 acres to our development portfolio and have achieved significant scale in the core of the Marcellus. We will now shift our focus from acquisitions to integration as we work to drive higher capital efficiency through longer laterals; reduce per unit operating

costs through operational and G&A synergies; improve our sales portfolio by expanding access to premium markets; and deliver increased value to our shareholders," continued Schlotterbeck.

Daniel J. Rice IV, chief executive officer, Rice Energy, stated, "Natural gas is the key to a cleaner energy world; and the combination of Rice and EQT – two of the United States' largest, lowest-cost, and most responsible natural gas producers – creates an unparalleled leader in shale gas development that will benefit the environment and our shareholders for many decades to come."

As the vast majority of the acquired acreage is contiguous with EQT's existing acreage position, EQT anticipates a 50% increase in average lateral lengths for future wells located in Greene and Washington Counties in Pennsylvania. This same land synergy also complements the infrastructure footprint of EQT Midstream Partners, LP (NYSE: EQM), where growth opportunities are expected through drop-downs and additional organic projects. Already a leading producer in the Appalachian Basin, this acquisition will make EQT the largest natural gas producer in the United States.

## Misleading Statements and Omissions In the Registration Statement

50.     On July 27, 2017, Defendants caused to be filed, a materially incomplete and misleading Registration Statement with the SEC and disseminated it to Rice stockholders.  The Registration Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction.

51.     Specifically, as set forth below, the Registration Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) the Company's financial projections; (ii) insiders' potential conflicts of interest; (iii) Barclays' Financial Analyses; and (iv)  Accordingly, Rice stockholders are being asked to vote for the Proposed Transaction without all material information at their disposal.

### *Material Omissions Concerning Insiders' Potential Conflicts of Interest*

52.     The Registration Statement fails to disclose material information concerning the potential conflicts of interest faced by Rice management and the Board.

53.     The Registration Statement states that, following the close of the Proposed Transaction, certain members of Rice's Board will continue with the new company, and receive a variety of benefits. For example, in the merger agreement, EQT has agreed, subject to the approval of the charter amendment proposal by EQT's shareholders, to increase the size of the EQT board to thirteen directors and cause Rice IV and Vagt to become members of the EQT board upon the effective time.[1] However, the Registration Statement fails to disclose the timing and nature of all communications regarding future employment and/or benefits relating to Rice's management and directors, including who participated in such communications and when EQT first expressed its interest in retaining members of Rice's board following the merger.

54.     The omission of this information renders certain portions of the Registration Statement false and/or materially misleading in contravention of the Exchange Act including, *inter alia*, the following sections of the Registration Statement: (i) "Background of the Merger"; and (ii) "Board of Directors and Management of EQT Following Completion of the Merger."

**Material Omissions Concerning the Company's Financial Projections**

55.     Here, the Registration Statement discloses six non-GAAP accounting metrics for projected financial information over the years 2017-2021:  EBITDA, Cash Flow from Operations, Capital Expenditures, Adjusted EBITDA, and Adjusted Cash Flow from Operations.  However, providing these non-GAAP metrics without disclosing the line item metrics used to calculate them, or otherwise reconciling the non-GAAP projections to GAAP measures, makes the provided

---

[1] If EQT's shareholders do not approve the charter amendment proposal at the EQT special meeting, EQT has agreed to increase the size of the EQT board to twelve directors and appoint either Rice IV or Vagt, at Rice's election, upon the effective time and to seek shareholder approval to increase the maximum size of the EQT board specified in the EQT articles to thirteen directors at its next annual meeting of shareholders and appoint the Rice designee not appointed upon the effective time.

disclosures materially incomplete and misleading.

56.    The Registration Statement fails to disclose the line items underlying EBITDA necessary to reconcile EBITDA to its most directly comparable GAAP financial measure, including: (i) operating earnings; (ii) interest; (iii) taxes; and (iv) depreciation and amortization.

57.    The Registration Statement fails to disclose the line items underlying Cash Flow From Operations necessary to reconcile Cash Flow From Operations back to GAAP net income, including: (i) operating earnings; (ii) interest; (iii) taxes; (iv) depreciation and amortization; (v) interest expense; and (vi) cash taxes.

58.    The Registration Statement fails to disclose the line items underlying Capital Expenditures necessary to reconcile Capital Expenditures back to its most directly comparable GAAP financial measure, including: (i) capital needed for drilling and completion activities; (ii) additions to leasehold, acquisitions and divestitures; and (iii) capital needed for both maintenance and growth of the midstream.

59.    The Registration Statement fails to disclose the line items underlying Capital Expenditures necessary to reconcile Adjusted EBITDA to its most directly comparable GAAP financial measure. Although, the Registration Statement provides that "Adjusted EBITDA reflects the EBITDA from the E&P segment, the EBITDA from the RMH segment and the cash distributions earned from the common units, subordinated units and incentive distribution rights Rice owns in RMP," none of these inputs or adjustments are provided in the Recommendation Statement.

60.    The Registration Statement also fails to disclose the line items underlying Adjusted Cash Flow from Operations necessary to reconcile Adjusted EBITDA to its most directly comparable GAAP financial measure. Although, the Registration Statement provides that

"Adjusted Cash Flow from Operations reflects the Cash Flow from Operations from the E&P segment, the Cash Flow from Operations from the RMH segment and the cash distributions earned from the common units, subordinated units and incentive distribution rights it owns in RMP," none of these inputs or adjustments are provided in the Registration Statement.

61.     Finally, with respect to Barclays' *Discounted Cash Flow Analysis* for Rice, the Registration Statement provides that Barclays calculated Rice's estimated enterprise value range by utilizing the Company's "projected after-tax unlevered free cash flows for the fiscal period from April 1, 2017 through December 31, 2021 based on Rice's projections." However, the projected values for projected after-tax unlevered free cash flows for the fiscal period from April 1, 2017 through December 31, 2021, are not provided in the Registration Statement. Furthermore, the Registration Statement fails to reconcile after-tax unlevered free cash flows to its most directly comparable GAAP financial measure, or provide the values of the line items used in its calculation, including: (i) tax-affected earnings, (ii) interest, (iii) preferred cash dividend, (iv) tax expense, (v) depreciation and amortization, (vi) capital expenditures, (vii) adjusting for changes in working capital.

62.     The Registration Statement must disclose the necessary line items to reconcile these six non-GAAP measures to well-understood GAAP financial metrics.  Non-GAAP measures have no universally understood definition and vary widely between companies depending on the needs of management in promoting their own effect on Company performance.

63.     Because of the non-standardized and potentially manipulative nature of non-GAAP measures, when a company discloses information in a Proxy that includes non-GAAP financial measures, the Company must also disclose comparable GAAP measures and a quantitative reconciliation of forward-looking information. 17 C.F.R. § 244.100.

64.     On May 17, 2016, the SEC's Division of Corporation Finance released updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP financial measures.  One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide any reconciling metrics that are available without unreasonable efforts.  S.E.C. Comp. & Disc. Interps., Question 102.07 (May 17, 2016) https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.  The Registration Statement makes no effort to account for the failure to reconcile these non-GAAP measures to GAAP metrics.

65.     Without disclosure of these reconciling metrics, the Registration Statement violates SEC regulations and materially misleads Rice stockholders.

66.     These projections were provided to Barclays, and used by Barclays, for the purpose of creating a fairness opinion that could then be used in soliciting stockholder approval of the Proposed Transaction.  Because these analyses were presented to the Rice stockholders as evidence of the fairness of the Proposed Transaction, the omission of the financial projections materially misleads those same stockholders as to the accuracy and value of the analyses.

### *Material Omissions Concerning Barclays' Financial Analyses*

67.     The Registration Statement describes Barclays' fairness opinion and the various valuation analyses it performed in support of its opinion. However, the description of Barclays' fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Barclays' public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Barclays' fairness opinion in determining how to cast their vote on the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to Rice's stockholders.

16

68.     With respect to Barclays' *Selected Comparable Company Analysis* for Rice, the Registration Statement fails to disclose the individual multiples for each of the selected public companies analyzed by Barclays, as well as the financial performance metrics for each selected company. Without such information, Rice's stockholders are unable to determine how the multiples used in determining Rice's value compare to the other companies.

69.     With respect to Barclays' *Selected Precedent Transaction Analysis*, the Registration Statement fails to disclose the individual multiples for each of the selected transactions analyzed by Barclays, as well as any benchmarking analyses Barclays performed for Rice in relation to the target companies. Without such information, Rice's stockholders are unable to determine how the multiples used in determining Rice's value compare to the other companies. As a result, stockholders are unable to assess whether Barclays utilized unreasonably low multiples thereby rendering the implied share price ranges set forth in the analyses misleading.

70.     Finally, with regard to Barclays' *Transaction Premium Analysis*, the Registration Statement fails to disclose the premiums in the transactions observed by Barclays.

71.     The omission of this information renders certain portions of the Registration Statement false and/or materially misleading in contravention of the Exchange Act including, *inter alia*, the following sections of the Registration Statement: (i) "Background of the Merger"; and (ii) "Opinion of Rice's Financial Advisor."

### *Material Omissions Concerning the Sale Process Leading up to the Merger Agreement*

72.     With regard to the omission of material information relating to the sale process leading up to the Proposed Transaction, the Registration Statement states at that the Company entered into a confidentiality agreement with Company A and Company C to facilitate the discussion of various potential strategic opportunities. However, details regarding the nature of the

confidentiality agreements are worryingly absent from the Registration Statement.

73.     Specifically, the Registration Statement fails to disclose whether any non-disclosure agreements executed by Rice and the prospective bidders, including Company A and Company C, contained standstill and/or "don't ask, don't waive" provisions that are or were preventing those counterparties from submitting superior offers to acquire the Company.

74.     Without this information, the Company's stockholders are being misled into assuming that these industry participants, which were actively interested in acquiring the Company, could make an offer to acquire the Company if they so choose – when they may have been contractually precluded from doing so.

75.     Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company stockholders will continue to suffer absent judicial intervention.

### FIRST CAUSE OF ACTION
**Against All Defendants for Violations of Section 14(a) of the Exchange Act
and Rule 14a-9 Promulgated Thereunder**

76.     Plaintiff repeats and realleges each allegation set forth herein.

77.     As detailed herein, Defendants disseminated the false and misleading Registration Statement specified above, which contained statements which, at the time and in the light of the circumstances under which they were made, were false and misleading with respect to material facts and which omitted to state material facts necessary in order to make the statements therein not false or misleading or necessary to correct earlier statements which had become false or misleading, in violation of Section 14(a) of the Exchange Act and SEC Rules promulgated thereunder, including SEC Rule 14a-9.

78.     By the use of the mails and by means and instrumentalities of interstate commerce and the facility of a national securities exchange, Defendants solicited and permitted the use of

their names to solicit proxies or consents or authorizations in respect of the common stock of Rice.

79.     By virtue of their positions within the Company, the Individual Defendants were aware of this information and of their duty to disclose this information in the Registration Statement. The Registration Statement was prepared, reviewed, and/or disseminated by Defendants. The Registration Statement misrepresented and omitted material facts, including material information about the unfair sale process for the Company, the unfair consideration offered in the Proposed Transaction, and the actual intrinsic value of the Company's assets. Defendants were at least negligent in filing and disseminating the Registration Statement with these materially false and misleading statements and omissions. Defendants have also failed to correct the Registration Statement and the failure to update and correct false statements is also a violation of Section 14 of the Exchange Act and SEC Rules promulgated thereunder.

80.     The omissions and false and misleading statements in the Registration Statement are material in that a reasonable stockholder would consider them important in deciding whether to vote in favor of and tender their shares in the Proposed Transaction. A reasonable investor would view a full and accurate disclosure as significantly altering the "total mix" of information made available in the Registration Statement and in other information reasonably available to stockholders.

81.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from immediate and irreparable injury, which defendants' actions threaten to inflict.

**SECOND CAUSE OF ACTION**
**Against the Individual Defendants for Violation of Section 20(a) of the Exchange Act**

82.     Plaintiff repeats and realleges each allegation set forth herein.

83.     The Individual Defendants acted as controlling persons of Rice within the meaning

19

of Section 20(a) of the Exchange Act, as alleged herein. By virtue of their positions as officers and directors of Rice and their participation in and awareness of the Company's business and operations and their intimate knowledge of the materially false statements and omissions contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

84.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be false and misleading prior to or shortly after these statements were issued and had the ability to prevent the issuance of the statements or to cause the statements to be corrected.

85.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. Among other things, the Registration Statement at issue contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, they were directly involved in the making of that document.

86.     In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Registration Statement purports to describe the various issues and information that they reviewed and considered – descriptions which had input from the Individual Defendants.

87.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a)

of the Exchange Act.

88.     Plaintiff has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in Plaintiff's favor and in favor of the Class and against Defendants as follows:

A.      Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff as a representative of the Class, and appointing his counsel as class counsel;

B.      Enjoining Defendants, their agents, counsel, employees, and all persons acting in concert with them from consummating the Proposed Transaction, unless and until the Company adopts and implements a procedure or process to obtain the best available terms for shareholders;

C.      Rescinding, to the extent already implemented, the Proposed Transaction or any of the terms thereof, or granting Plaintiff and the Class rescissory damages;

D.      Directing the Individual Defendants to account to Plaintiff and the Class for all damages suffered as a result of the wrongdoing;

E.      Awarding Plaintiff and the Class the costs and disbursements of this action, including reasonable attorneys' and experts' fees; and

F.      Granting such other and further equitable relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury for all issues so triable.

Dated: August 15, 2017

LAW OFFICE OF ALFRED G. YATES, JR., P.C.

By: */s/ Alfred G. Yates, Jr.*

OF COUNSEL:

**LEVI & KORSINSKY LLP**
Donald J. Enright
denright@zlk.com
Elizabeth K. Tripodi
etripodi@zlk.com
1101 30th Street, NW, Suite 115
Washington, DC 20007
Telephone: (202) 524-4290
Facsimile: (202) 333-2121

Alfred G. Yates, Jr.
PA Bar No. 17419
Gerald L. Rutledge
PA Bar No. 62027
300 Mt. Lebanon Boulevard
Suite 206-B
Pittsburgh, PA 15234-1507
Telephone: (412) 391-5164
Facsimile: (412) 471-1033
yateslaw@aol.com

*Attorneys for Plaintiff Susan Traurig*